## SOUTHERN RY. CO. v. CITY OF ASHEVILLE.

(Circuit Court, W. D. North Carolina. August 24, 1895.)

1. INJUNCTION—JURISDICTION—RESTRAINING LEVY OF TAX.
    Injunction will lie to restrain the levy of a tax, where the complainant is a common carrier, and the tax is made a lien on its real estate, though its personal property is first to be resorted to by the tax collector, and the remedy at law, by payment and action to recover back, is not as efficient as the remedy by injunction.

2. INTERSTATE COMMERCE—RAILROAD COMPANIES—LICENSE TAX.
    Act N. C. March 13, 1895, § 42, subd. 6, authorizing a city to levy, on every railroad company doing business or having an office in the city, a license tax, not to exceed 1 per cent. of the gross receipts of its business, is invalid, in the case of a railroad whose business extends to points out of the state, as a regulation of interstate commerce, and therefore a tax levied under it is invalid, though it is limited to business of the railroad done within the state.

Bill by the Southern Railway Company against the city of Asheville to enjoin levy of a license tax. Decree for complainant.

Fab. H. Busbee, for petitioner.
Julius C. Martin, for defendant.

SIMONTON; Circuit Judge. This is a bill filed by the complainant, a citizen of the state of Virginia, and engaged in the business of a common carrier, against the defendant, a municipal corporation of the state of North Carolina, praying an injunction against the levy of a tax because it violates the interstate commerce law. Upon filing the bill, a rule to show cause was issued with the usual restraining order. The respondents filed their answer, and the case has now come up, using the answer as a return to the rule. The answer is a strong presentation of the position of the defendant. It challenges the jurisdiction of the court on every ground of equitable cognizance, and on the merits insists that there is no violation of the interstate commerce law,—the ground set up by complainant as the foundation of the prayer for an injunction. The complainant, a railroad company doing business in and having an office in the city of Asheville, has been required to pay to said city a privilege tax, being the amount of 1 per cent. of the gross receipts on its said business in that city. The business upon which this is estimated the city council limited to the business done within the state of North Carolina.

The first question to be met in this case is as to the jurisdiction of the court. An injunction will not lie against an illegal tax on the sole ground that the tax is illegal. Shelton v. Platt, 139 U. S. 591, 11 Sup. Ct. 646; Allen v. Car Co., 139 U. S. 658, 11 Sup. Ct. 682. The circumstances must bring the case within some recognized branch of equitable jurisdiction, such as where the enforcement of the tax would lead to a multiplicity of suits or produce irreparable injury, or, in case of real estate, would throw a cloud upon the title. Robinson v. Wilmington, 25 U. S. App. 147, 13 C. C. A. 177, 65 Fed. 856. Under the charter of the city of Asheville the fiscal year begins on the 1st of June. The lien of the tax attaches to all real property of the taxpayer from that date, and is paramount to all other liens, and continues until the tax is paid. It is true that, in the collection of the tax, the tax collector must first seek personal property out of which the tax may be paid. But that lien on the realty exists and continues and is finally put in active operation if there be an insufficiency of the personalty. The tax therefore from the 1st of June creates a cloud on the title of all the realty of the taxpayer. Again, a railroad company is a common carrier. Its plant consists of rolling stock of every description, designed for use in performing its functions as a carrier. The real estate is subsidiary to the use of the plant. The existence of a tax execution under which any part of this rolling stock can be levied on and stopped, its business and traffic interrupted, at the hazard of grave responsibility to the public, involves a threat of irreparable injury, and an exposure to a multitude of suits. Allen v. Railroad Co., 114 U. S. 311, 5 Sup. Ct. 925, 962. It is said that the statutes of North Carolina give to the complainant a plain, adequate, and complete remedy at law. Apart from the question whether this court, sitting in

equity, can be deprived of jurisdiction because a remedy exists in some other tribunal in another jurisdiction, it does not seem that the remedy tendered by this statute is plain, adequate, and complete. Equity jurisdiction may be invoked though there be a remedy at law, unless the remedy at law, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy in equity. Kilbourn v. Sunderland, 130 U. S. 505, 9 Sup. Ct. 594. The remedy under the statute requires the payment of the disputed amount in full, a suit against the official receiving it, a trial in a state court, with the uncertainty both as to the recovery and the mode of enforcing it, as well as of the person against whom it may be enforced. It can hardly be said that this remedy is either plain, adequate, or complete. This seems to be conceded under the statute of North Carolina, for section 76, c. 119, Laws 1895, permits an injunction to lie if the tax is levied for an illegal or unauthorized purpose, or be illegal or invalid. The issue in this case is, is this tax illegal or invalid?

This brings us to the merits of the case. The tax in question is levied by the city of Asheville under the authority of the legislature. As municipal corporations in themselves have no authority to levy taxes, and derive all their authority to this end from the legislature, we must look to the act of the legislature, and determine whether or not that is in conflict with the constitution and laws of the United States. If the action of the legislature be invalid, nothing that the municipality can do under it can cure the invalidity or restore it to life. Were this not so, the municipality, the creature of the legislature, could amend and control the act of its creator. The act of the legislature of North Carolina giving the charter powers to the city of Asheville authorizes the city to levy on "every express company, telegraph company, telephone company, gas company, electric light company, power company, street-railroad company and railroad company, doing business or having an office in said city, a license tax." Act March 13, 1895, § 42, subd. 6. This is a tax on the business or calling of the several classes mentioned, and is imposed because of that business. The amount of the tax is limited. It must not exceed in amount 1 per cent. of the gross receipts of the business during the year. Now the business of the complainant corporation is that of common carrier between Asheville and points within and without the state of North Carolina; that is to say, of interstate and infrastate commerce. And this act taxes all this business. The complainant is taxed, not because some of its business is between points within the state of North Carolina, but because it does business and has an office in Asheville. Its business may be wholly interstate, yet, under the terms of this act, it must pay the license tax. It is true that, in estimating its license tax, the city council only took into consideration the infrastate business of the company. But under the terms of the act they could have made the estimate upon the whole business of the company, and we deal not with what the council did do, but with what they could have done, under the authority conferred on them. The validity of this authority, not of their action under it, is the question before us. This case is on

all fours with the case of Webster v. Bell, 68 Fed. 183, decided by the circuit court of appeals, Fourth circuit, at its May term. Let the temporary injunction issue, as prayed for in the bill.