# The State *v.* Kidd and The State *v.* Kidd, Executrix.

## *Contest of Assessment for Taxes.*

1. *Taxation; stock in foreign corporation subject to taxation in this State.*—Unless otherwise fixed by statute, the situs of shares of stock in a corporation, for the purpose of taxation, is at the domicil of the owner; and the shares of stock in a foreign corporation owned by a citizen of this State, are subject to taxation in the county of the owner's residence. (*Varner v. Calhoun*, 48 Ala. 178, overruled).

2. *Same; assessment of escaped taxes presumed to be correct.* Where a tax assessor, in his line of official duty, makes an assessment for escaped taxes, such assessment list and the return thereof is presumed to be correct, and in a contest of the assessment so made, is admissible in evidence.

3. *Same; sufficiency of assessment.*—An assessment in a list of taxes as "Stock and bonds and money, and money hoarded or on deposit subject to check, draft or order, or in safety deposit box, safe or vault or elsewhere. Monied capital, money lent, solvent credits or credits of value in the aggregate sum of $150,000.00," is sufficient to cover stock in foreign railroad corporations owned by the person against whom such assessment is made, and as such is a valid assessment of such stock. (TYSON, J., *dissenting.*)

APPEAL from the Circuit Court of Elmore.

Tried before the Hon. A. H. ALSTON.

These two cases involve the same question and were tried upon substantially the same facts and on the present appeal are submitted together. The proceedings in each of the cases were instituted by a report of the tax assessor of Elmore county, addressed to the commissioner's court of said county, in which he reported that he had "assessed escaped taxes against Louisa V. Kidd on the following described property, namely: Stocks and bonds, money hoarded or on deposit subject to check,

draft or order, or in safety deposit box, safe or vault or elsewhere, monied capital, money lent, solvent credits, and credits of value, in the aggregate of the value of the sum of $150,000." The report then states that the property had escaped taxation for the years from 1893-1898, inclusive, and then enumerates the taxes that were due for each of said years. The report in the case against Louisa V. Kidd, as executrix, etc., was the same, except that the aggregate value of the property was fixed at $200,000. Each of these reports was signed by "J. I. Plott, Tax Assessor," and was filed in the commissioners court on December 16, 1898. Attached to each of these reports was a return list of what purported to be the assessment. Each of these assessments was a mere entry on ordinary assessemnt blanks used by tax-payers in making a return of their property to the tax assessor. Each of the blanks was designated "Returned list for 1899," and it was stated that each was "a list of property and assessment versus Mrs. Louisa V. Kidd for the years 1893, 1894, 1895, 1896, 1897, 1898." On the blank in the other case, the list was designated as "list of property and assessment versus Louisa V. Kidd, executrix," for the same years. On each list of assessment the property was assessed as follows: "Stocks and bonds and money hoarded or on deposit subject to check or draft or order, or in safety deposit box, safe or vault or elsewhere. Moneyed capital, money lent, solvent credits or credits of value, in the aggregate sum of $150,000 for years 1893, 1894, 1895, 1896, 1897 and 1898." On the list in the other case the assessment was the same, with the exception of the aggregate of the property, which was fixed at $200,000.

In the commissioners court, upon citation issued upon the filing of the said report by the tax assessor, Louisa V. Kidd filed separate answers in each case, in which she set up that the property sought to be taxed in said assessment was all situated in the State of New York, beyond the control of the defendant and consisted of stocks in railroad corporations, and that the same had never been in the State of Alabama and was not subject to taxation under the laws of Alabama. Upon the

hearing in the commissioners court there was a correction of the assessment, and, as corrected, judgment was rendered against the respondent in each of the cases. From each of these judgments separate appeals were taken to the circuit court, where the cause was tried *de novo*. In the circuit court the reports of the tax assessor, with the assessment lists appended to each were introduced in evidence. The bill of exceptions does not show that there was any objection made by the defendant to the introduction in evidence of either the report or assessment list. It was shown by the evidence introduced on the trial that the defendant's right to the property in each case was derived from H. B. Tulane, deceased, who died as the owner of the property in question; and it was further shown by the evidence that in the years covered by the assessments, H. B. Tulane was the owner of certain shares of the capital stock of several foreign railroad corporations and of corporate bonds of foreign corporations; that during his life and since his death the property had been and was deposited in safety vaults in New York city.

Louisa V. Kidd was shown to be a resident of the State of Alabama and to have resided in Elmore county.

Upon the introduction of all the evidence, the court, at the request of the defendant, gave the general affirmative charge in her behalf in each of the cases. To the giving of this charge, the plaintiff duly excepted in each case. In each of the cases there were verdict and judgment for the defendant. The State appeals in each of the cases, and assigns as error the giving of the general affirmative charge requested by the defendant, and the rendition judgment in favor of the defendant.

GORDON MACDONALD and PARKER & GOLSON, for appellant.—Exemptions from taxation must be shown in clear, unmistakable terms and cannot be shown by doubtful and ambiguous language. The existence of a well founded doubt is equivalent to a denial of claim of exemption from taxation.—*Insurance Co. v. Tennessee*, 151 U. S. 174; Burroughs on Taxation, 132, § 70; Cooley on Taxation, 204, note 3. An immunity from State taxa-

tion will not be recognized unless granted in words too plain to be mistaken.—*Railroad Co. v. Missouri*, 120 U. S. 732.

The taxing power of the State is never presumed to be relinquished and it exists, unless the intention to relinquish is declared in clear and unambiguous terms, admitting of no other reasonable construction.—*North Missouri R. Co. v. Maguire*, 20 Wall. 46; *Providence Bank v. Billings*, 4 Pet. 514;*Southwestern R. Co. v. Wright*, 116 U. S. 231; *Tennessee v. Whitsworth*, 117 U. S. 139; *Erie K. R. Co. v. Pennsylvania*, 21 Wall. 492; *Vicksburg, etc. R. Co. v. Dennis*, 116 U. S. 116. "As taxation is the rule and exemption is the exception, the intention to make exemption ought to be expressed in clear and unambiguous terms, and it cannot be taken to have been intended when the language of the statute on which it depends is doubtful and uncertain."—*Dauphin St. Ry v. Kennerly*, 74 Ala. 583; *City Council v. Shoemaker*, 51 Ala. 114; Cooley on Taxation, p. 204.

All property within the state, therefore, being *prima facie* subject to taxation, and in terms made so by subdivision 14 of § 3911 of the Code, the question presents itself whether shares of stock in foreign corporations, owned by residents of Alabama, are, in legal contemplation, property within the State; or, to put it in other words, have such shares a *situs* within this State for the purposes of taxation?

Shares in a corporation are also the shares of the stockholder, wherever he may have his domicile, and if taxed to him as his personal estate, are properly taxable by the jurisdiction to which his person is subject, whether the corporation be foreign or domestic.—Cooley on Taxation, 22, 23; Burroughs on Taxation, 188, § 90; Story on Conflict of Laws, §§ 352, 399; Desty on Taxation, 62, 63; Cooley on Taxation, 57 and notes; Welty's Law of Assessments, § 57; *Boyd v. Selma*, 96 Ala. 305. The case of *Varner v. Calhoun County*, 48 Ala., has been virtually overruled in the case of *Boyd v. Selma*, 96 Ala. 305, *supra*, and is in direct conflict with the vast weight of authority and all the text-books.

Stocks are unquestionably and in express words made

[The State v. Kidd and The State v. Kidd, Executrix.]

personal property for the purposes of taxation. If they are so, and are not otherwise specified and exempted from taxation, they are of necessity included under subdivision 14 of § 3911 of the Code. This brings us to what is the sole material issue involved in this case. If exempted anywhere, that exemption must be found in subdivision nine (9) of § 3911 of the Code. It is strenuously argued by defendant's counsel, that this exemption is apparent from that section, and also from the sections of previous revenue laws of this State. As to the previous revenue laws, it is perfectly apparent that only shares of stock in corporations *which are required to list their property for taxation in this State were exempt.*—Subdivision 9, § 358 of Code of 1876; subdivision 8, § 451, of Code of 1886. Besides, the State cannot be presumed to wish to aid investments of its citizens in another State. Exemptions allowed to shareholders in corporations in this State cannot be claimed by resident shareholders of foreign corporations.— *Dwight v. Boston,* 12 Allen, 316 (Mass.).

GUNTER & GUNTER and J. M. CHILTON, *contra*— All things are presumed to be rightly done, and those claiming to disturb the *status quo* always hold the affirmative, and must establish their case requiring the change. The burden was upon the appellant, therefore, to show affirmatively error in the previous assessment, authorizing the claim for back taxes. The trial in this cause in the circuit court was on an appeal from an assessment by the court of county commissioners. The trial was *de novo* and the judgment of the court of county commissioners and the assessment for back taxes could be looked at for no purpose in the way of evidence, but merely to show the jurisdiction of the case by the circuit court.—*Birmingham B. & L. Asso. v. State,* 120 Ala. 403; *Sullivan v. State,* 110 Ala. 95. The presumption that the original assessments were correct still holds, and on the trial of the claim of error the burden is on the State, by competent and legal evidence to show the incorrectness of the tax assessor's assessment; that is, of the original assessments, and not the

27

back tax assessments; and that should have been the proper assessment and valuation, and until this was done, the circuit court could not render judgment against the defendant.—Authorities supra.

As the shares of stock in a corporation represent, in fact, only the property of the corporation, it is evident that a levy of a tax upon the property and capital stock of the corporation, and a levy upon the shares of stock in the corporation is double taxation. In most States, where the corporations are taxed, the shares are not taxed; or if taxed, their value is ascertained by deducting therefrom the taxable property of the corporation. We insist that the legislature of Alabama was mindful of this distinction in the system of taxation which has been in existence since 1884. The acts of 1897, p. 1512, shown in the Code by § 3911, clauses 8-9, deal with the subject of the taxation of shares of stock in corporations. By clause 8 shares in banks, or banking associations, are taxed to the bank, the value being ascertained by making deductions of the real estate owned by the bank. It will be observed that by each clause, every share of any corporation, whether organized in this State or under another State, is taxed; but these general words are restricted, we find, to shares of corporations doing business in this State by the terms of the statute, which says the tax must be assessed and collected in the county where such corporation has its chief and home office in this State. It was clearly intended by the statute to exempt all shares of corporations organized under the laws of this State or *any other State,* from taxation, because the exceptions of railroads, etc., from the tax imposed on shares of any corporation by clause 9, must, upon the plainest principles, be as general as the terms imposing the tax. But the shares of railroads and the other corporations named are exempt from taxation in this State, under clause 14, not because it has been "otherwise specified" in the statute, but because clauses 8 and 9 had dealt with the entire subject of the taxation of the shares of corporations, and had imposed such taxes on such shares as the legislature, mindful of the principles of equity,

thought should be taxed. The legislature, in framing the law, had in view the fact that corporate shares substantially represent corporate property, (*Nat. Com. Bank v. Mayor, etc.*, 62 Ala. 284) ; and that to each jurisdiction the corporations doing business therein the equitable right to tax property and shares should appertain, thereby avoiding double taxation upon the same property.—2 Cook on Corporations, § 567 ; Cooley on Taxation, 227 ; *Savings Bank v. Nashua*, 46 N. H. 389 ; *People v. Com.* 4 Hun 595 ; *People v. Campbell*, 138 N. Y. 546.

It is not the policy of the laws of the State of Alabama to tax the same thing over two different names, such as for instance, the capital stock of a corporation, the corporate property and the shares of stock.—*Burks v. State,* 62 Ala. 462 ; *Board of Revenue v. Gas Light Co.*, 26 Atl. Rep. 1077 ; *Whitsell v. Northampton*, 49 Pa. 526 ; *Safe Deposit Co. v. Laughlin,* 129 Pa. St. 612.

If the provision of the revenue law under consideration is construed to impose a tax on resident owners for shares in foreign corporations and on resident owners of equitable estates located in other States and vested in trustees who are themselves resident, such law, in this particular, is unconstitutional, both under the constitution of the State and of the United States.—*Railway Co. v. Ellis*, 165 U. S. 154 ; *Board of Rev. v. Gas Light Co.*, 64 Ala. 269.

The assessment as contained in the list which was introduced in evidence was sufficient to authorize the imposition of taxes. A failure to extend the taxes so as to show how much is imposed on each person is fatal to its validity. An assessment in which the amount of the taxes is not extended is void. "After listing and valuation, and after the persons taxable have been designated, the amount to be imposed upon each must be computed and entered in the roll by the assessor."—*People v. Hagedorn,* 104 N. Y. 216 ; *Seymour v. Peters,* 67 Mich, 215 ; *Greenough v. Fulton Coal Co.*, 74 Pa. St. 486.

In *State v. Perkins,* 24 N. J. L. 409, it was held it was not sufficient to give the valuation and mention the rate per cent., without entering the amount.

[The State v. Kidd and The State v. Kidd, Executrix.]

A failure to extend the tax so as to show how much is imposed on each person, is fatal to its validity.—*Seymour v. Peters, supra; Bank v. Early,* 72 Iowa, 273; *Hooper v. Sac. County Bk., Ib.* 280; *Moon v. March,* 40 Kan. 58; *Billinger v. Gray,* 51 N. Y. 600; *St. L. etc., R. R. Co. v. State,* 47 Ark. 323.

SHARPE, J.—These cases originated in contested assessments of property supposed to have been subject to and to have escaped from taxation during the years from 1893 to 1898, inclusive. In this court they were heard and submitted together and will be considered together.

The principal items assessed are shares of stock in foreign railroad corporations, and in each case the question arises whether, by the revenue laws contained in the Codes of 1886 and 1896, respectively, such shares were subject to taxation as against a resident owner.

On the general subject of taxing shares of corporate stock there are differences between the provisions of the former and those of the present Code. Neither of them expressly designates as taxable shares in foreign corporations having no place of business or property in this State, though in each Code appears a general clause declaring subject to taxation "all other property, real and personal, not otherwise specified."

. Shares in stock of corporations are property and by our statute they are made to come within the term, personal property.—Code, § 3906, subdiv. 2. Such prop-\ erty is intangible and incapable of having an actual location, and its anomalous character has given rise to some difficulty in fixing its legal situs. In *Varner v. Calhoun,* 48 Ala. 178, it was held that a tax on stock in a foreign corporation, though expressly named as taxable by the existing statute, could not be collected. That\ decision, however, appears to be against the weight of authority and at variance with the principle declared by this court in *Boyd v. Selma,* 96 Ala. 144. The latter case, we think, asserts the true doctrine, which is to the effect that, unless otherwise fixed by statute, the situs of shares of stock for the purpose of taxation is at the

owner's domicile.—Burroughs on Taxation, § 50; *South Nashville St. R. Co. v. Morrow*, 87 Tenn. 406; 2 L. R. A., 853, and authorities cited on this subject in appellant's brief. We are unwilling to follow the decision in *Varners' Case, supra*, and it must be overruled.

With some exceptions founded on public policy and other peculiar grounds, taxing laws should be, and generally are, conformed to the principles of equality and natural justice, which require that the burden of maintaining public revenue should be rested upon all property within the jurisdiction. Out of this consideration has grown a rule of construction to the effect that from statutes providing for taxation of property generally, exemptions are not made except by clearly expressed terms.—Cooley on Taxation, 146; *Dauphin, etc. R. Co. v. Kennerly*, 74 Ala. 583; *Bank v. Billings*, 4 Pet. (U. S.), 514; 25 Am. & Eng. Encyc. Law, 158.

By the Code of 1886 capital stock in domestic corporations is made taxable against the corporation itself with deductions on account of other property which they are required to list for taxation.—§ 453, subdiv. 9, and § 478. Subdiv. 8 of § 451 directs that "the shares of the capital stock of any company or corporation which is required to list its property for taxation in this State shall not be assessed against the shareholders of such company or corporation." This clause applies in terms to shares of a particular class, and has no reference to corporations having no property list for taxation in this State.—*McIver v. Robinson*, 53 Ala. 456. The exemption and likewise the distinction made between the two classes of corporations could only have been inspired by the consideration that the burden certainly imposed by our laws on property of the corporation would indirectly diminish the value of its stock, while in the case of a corporation having no property within the jurisdiction, no such result could follow, except from foreign legislation, over which this State has no control and for which it is in no way responsible.

The same spirit of legislation is discovered in the Code of 1896, but from it the exempting clause is omitted and in the schedule of taxable property there is

placed "every share of any corporation organized under the laws of this State or any other State or of the United States (other than railroad, telegraph, express and sleeping car companies, building and loan associations and banks or banking associations), to be assessed and collected in the county wherein such corporation has its chief or home office in this State, and to be assessed at its actual market value to the person in whose name such shares stand on the books of the corporation, and not to the corporation."—§ 3911, subdiv 9. The same section proceeds to prescribe a mode for assessing shares and also corporate property, and for deducting the value of the corporation's taxable property from the value of the shares, so as to make the shares taxable only upon the excess of values. While the words used in the beginning of this subdivision 9, standing alone, would seem to include all corporations, the provision, taken as a whole, would be meaningless and abortive in respect of foreign corporations having neither property nor habitation in this State, since the fixed plan of assessment would not be pursued, either as to place or property. A reasonable interpretation of this whole provision for taxing shares confines it to shares in corporations having taxable property in this State. An exception can be no broader than the class from which it is taken, and this bracketed exception of shares in railroad, telegraph, express and sleeping car companies must likewise be confined to corporations having property subject to taxation here. The exemption of those shares is doubtless for the reason that elsewhere special provisions are made for taxing the property and privileges of the last-named corporations, which provisions could have no application to foreign corporations having no property and doing no business here. As to shares in them, we find nothing in either Code which should be construed as an exemption. By subjecting them the State does not infringe its general policy of avoiding double taxation, for the property is not doubly taxed by its own laws; and it is not bound, by comity or otherwise, to conform to laws elsewhere in order to shelter property from burdens which, but for such foreign laws, would not have come

upon it. That ownership of shares in capital stock is distinct from ownership of capital stock itself is generally if not everywhere recognized. Such shares are property, and as such, belong in, and are taxable in the State of the owner's residence, irrespective of legislation in another State.—*Dwight v. Mayor, etc., of Boston,* 12 Allen, 316.

If there is anything in the suggestion made in appellee's brief that deductions from share assessments allowed by the statute on account of assessments against property of the same corporation works undue discrimination as against shares in corporations having no property here to be so assessed and deducted, the infirmity lies in that part of the statute which allows the deduction, and not in that part which imposes the tax, though we do not intimate that there is any such infirmity. It does not follow that because a specially devised plan of taxation be inadequate or abortive that property to which it relates will escape taxation, for it may be reached and taxed under general provisions where they are adequate.—*Sumter Co. v. Bank of Gainesville,* 62 Ala. 464.

As against the validity of the assessments against appellees, other than those shares of railroad stock, nothing has been suggested which requires particular consideration.

Tax assessments made in the line of official duty are entitled to the usual presumption of correctness which attends the acts of public officers.—*Perry Co. v. Selma, etc., Railway Co.,* 65 Ala. 391; 25 Am. & Eng. Encyc. of Law, 236; 2 Desty on Taxation, pp. 615, 616. The duty of assessing for escaped taxes and of making a list and return thereof is by the statute imperatively enjoined upon the assessor, and such list and return is of equal dignity as evidence with lists made for the current year. The evidence introduced upon the trial tended to show a valid assessment of property in both these cases and in each of them the circuit court erred in giving the general affirmative charge for the defendant.

The judgment must be reversed and the cause remanded.

RESPONSE TO APPLICATION FOR REHEARING.

In the record and briefs furnished on the original submission we found no objection urged to the assessments on account of form or irregularity in the manner in which they were made; hence nothing was said on that subject in the opinion first rendered.

Minute entries of the commissioners' court appearing in the transcript show that in the case against Mrs. Kidd individually, and likewise, in the case against her as executrix, she had notice of the assessments; and that she appeared by counsel to contest them. The defense set up in the special answer filed in the one case, and adopted in the other, is not that the manner of assessing was bad, but "that the property sought to be taxed in said assessment" is not taxable for the reasons and facts averred. As appears by the bill of exceptions, the assessment list, supplemented by the report made by the assessor to the commissioner's court were offered in evidence for the stated purpose "of showing that the said assessment had in fact been made, and upon what property and for what years it was made." The failure to object to this evidence was a waiver of objections not going to the total invalidity of the assessment.

Except where taxes are authorized to be imposed and collected only according to specal statutes requiring strict construction, irregularities and informalities in assessments do not render them void. "No objection which does not go to the groundwork of the tax, so as to materially affect its principle, and show it must necessarily be involved, ought to have the effect of rendering the whole invalid."—2 Desty on Taxation, § 115, pp. 611, 612. That the description of property in these assessments is not more specific is not fatal to their validity, even if it does not conform precisely to requirements of the statute. Respecting the assessment of personal, as distinguished from real, property, it is in general sufficient to uphold the proceedings if the description be made with such reasonable certainty as will inform the taxpayer for what he is to be taxed.—*People v. Home Ins. Co.,* 29 Cal. 533; *San Francisco v. Pennie,* 93 Cal. 465; *San Francisco v. Flood,* 64 Cal. 504; 25

[The State v. Kidd and The State v. Kidd, Executrix.]

Am. & Eng. Encyc. Law, 218. Such a description may be made by mentioning the property under an appropriate classification, as was done in this case.

Rehearing denied.

TYSON, J., *dissenting.*—It is of no consequence that the defendant in the court below, made no objection to the introduction in evidence of the list purporting to be the assessment made by the tax-assessor. The burden was upon the plaintiff to show a valid assessment. If the list introduced in evidence was valid, the plaintiff of necessity failed to make out its case, and the affirmative charge was properly given for the defendant. If the infirmity went to its invalidity, it cannot support a judgment.

There is not the semblance of compliance with § 3948 requiring a description of the property and the value of the items assessed. Nor was it shown that the assessor entered the assessment in his book under the head of "Commissioner's Assessment of Escaped Taxes," as required by the act approved February 3, 1897.—Acts 1896-7, p. 521. In my opinion the conclusion cannot be escaped, from an examination of these statutes and the act, that their provisions are mandatory, being for the benefit of the tax-payer, and in order to constitute a valid assessment, there must be a compliance with them. *State Auditor v. Jackson County,* 65 Ala. 156, and authorities therein cited and reviewed; 25 Am. & Eng. Encyc. Law, 210; Burroughs on Taxation, § 95. In Desty on Taxation, p. 612, it is said: "In the assessment of property for taxation one rule is plain, and well settled, that all those measures which are intended for the security of the citizen for securing equality of taxes, and to enable every one to know with reasonable certainty for what polls and what real estate and personal property he is taxed, and for what others liable with him are taxed, are conditions precedent." In Welty on Law of Assessments, p. 15, it is said: "The form of the assessment roll is usually the subject of statutory regulation. When a form is prescribed, the assessment must, at least substantially, conform to it. It is a substantial right

[The State v. Kidd and The State v. Kidd, Executrix.]

of the person assessed to be informed by the assessment roll itself, as to the character of each item of the total tax; whether each is in kind and amount such as the law levies, so that he may pay or offer to pay the amount of any tax which he believes to be authorized by law and resist the payment of any which he deems to be illegal. When the law requires the property assessed to be described or scheduled separately, and the value and taxes against each article or class of property to be carried into separate columns and this is not done, but the taxes carried simply into one column of aggregates, the assessment is invalid. The reason is, a right of the tax-payer is disregarded and the courts, when such is the case, will not inquire whether he is injured but will presume that he was." Here, the property proposed to be assessed is not even desingated. The assessment list in the case of State v. Kidd is in these words: "Stocks and bonds and money hoarded or on deposit subject to check or draft or order, or in safety deposit box, safe or vault or elsewhere. Moneyed capital, money lent, solvent credits or credits of value in the aggregate sum of $150,000 for years 1893, 1894, 1895, 1896, 1897, 1898." In the case of State v. Kidd, Executrix, the assessment list is in these words: "Stocks, bonds, money, money hoarded, or on deposit subject draft or order, or in safety deposit box, safe or vault and elsewhere. Moneyed capital, money lent, solvent credits and credits of value in the aggregate of the value of $200,000 for the years 1893, 1894, 1895, 1896, 1897, 1898." Clearly both of the assessments are on solvent credits or credits of value. By no rule of construction can the amounts of money expressed be referred to the first items mentioned as subjects of taxation, to-wit, stocks, bonds, etc. But whether this construction be the correct one or not, it is quite clear that there is nothing in the language above quoted which reasonably designates stocks in foreign corporations as the subject matter of the assessment. Stocks and bonds are classified as a different subject of taxation from money hoarded or moneyed capital. So money hoarded is classified as a different subject of taxation from

moneyed capital, which includes money lent, solvent credits or credits of value, and all money employed in the business of advancing or pending in any kind of chattels, choses in action, or personal property, or used in buying or discounting notes, bonds, or bills of exchange. Subdivisions 6, 7, 8, 9 and 11 of § 3911 of the Code. A more indefinite assessment, I apprehend, could not have been made. The question here under consideration is directly and pointedly decided in *Thompson v. Davidson*, 1 Minn. 412, where it is said: "The provisions of statute, under which the listing and assessment were made in this case, plainly contemplate that the assessor shall not only make a valuation in dollars and cents of the personal property subject to taxation, but that he shall *list* the same, that is to say, describe it, so as to show more or less definitely, according to its character, to what property the valuation relates." The authorities relied upon by SHARPE, J., do not support the proposition he asserts, that this is a mere irregularity. Indeed, an application of the rule as he states it to be, which he deduces from the authorities cited, to the alleged assessments in hand, demonstrates their invalidity. He says: "Respecting the assessment of personal as distinguished from real property, it is in general sufficient to uphold the proceedings if the description be made with such certainty as will inform the tax-payer for what he is to be taxed. Such a description may be made by mentioning the property under an appropriate classification." He concludes that that was done in this case. My insistence is, that the assessment as shown in the lists does not, with reasonable certainty, inform the defendants for what they are to be taxed; whether upon stocks, bonds, money capital, solvent credits, is not shown by the language employed.

Another error was committed by the court in indulging the presumption upon which the plaintiff is allowed to make out its case. To my mind, this position is absolutely untenable. It is made the duty of the tax-assessor in the first instance, to assess all property belonging to tax-payers in his county, and also to assess escaped taxes upon all property, upon discovering that any prop-

erty has escaped taxation in any previous assessment or assessments within five years next preceding. The presumption indulged by the majority of the court must be made to rest upon—and can have no other foundation—the theory, that it. is made the duty of the tax-commissioner to discover, and upon discovery that property has escaped taxation to report it to the assessor (Acts 1896-7, p. 521), and having discovered it, and having assessed it, he did so in compliance. with his official duty. Just why the same presumpton should not be indulged that the tax assessor has done his duty for the past five years, is incomprehensible to my mind. This presumption could as well be indulged as the former, especially as the one indulged by the court puts a penalty upon the tax-payer for failing to make the assessment in the first instance.

What I have said being conclusive, in my opinion, against the rights of the plaintiff to recover, it is unnecessary to discuss the constitutional question.